UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LANA WEINBACH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 4:18-CV-00381-JAR |
| COMPUTERSHARE, INC. and | ) |
| THE BOEING COMPANY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM & ORDER**

This matter is before the Court on Defendant Computershare, Inc.'s ("Computershare") motion for summary judgment on statute of limitations (Doc. No. 90) and Defendant The Boeing Company's ("Boeing") motion for summary judgment (Doc. No. 96). For the reasons set forth below, Computershare's motion for summary judgment on statute of limitations will be granted, and Boeing's motion for summary judgment will be granted in part and denied in part. Given this Court's ruling, Computershare's motion for summary judgment regarding measure of damages (Doc. No. 92) and motion for summary judgment on statute compliance (Doc. No. 94) will be denied as moot.

**I. Background[1]**

---

[1] Except as otherwise specified, these facts are taken from Computershare's statement of uncontroverted material facts in support of its motion for summary judgment on statute of limitations (Doc. No. 91-1) and Boeing's statement of uncontroverted material facts in support of its motion for summary judgment (Doc. No. 98), to the extent they are admitted by Plaintiff (Doc. Nos. 110, 112).

1

In 1967 and 1996, Plaintiff's father purchased shares of McDonnell Douglas stock. Plaintiff co-owned these shares with her parents as joint tenants with right of survivorship. The shares were held in an account ending in -345 ("Account 345"). Plaintiff's mother died in 1977, leaving Plaintiff and her father as the remaining joint owners of Account 345. Plaintiff's father received quarterly dividend checks associated with Account 345 until August 1997, when McDonnell Douglas merged with Boeing.

In support of its motion, Boeing presented evidence that after the merger, all McDonnell Douglas shareholders were instructed to respond to have their shares converted to Boeing shares, but neither Plaintiff nor her father took the requested action. Plaintiff disputes that they did not take the requested action, testifying at her deposition that her father received instructions and mailed a response. In any event, the McDonnell Douglas shares associated with Account 345 were not converted to Boeing stock, and Plaintiff's father did not receive quarterly dividend checks associated with that account after the merger. He did, however, receive 1099-DIVs for dividends associated with the 345 Account; the last 1099-DIV associated with Account 345 was received for tax year 2008 in January or February 2009.[2] The 345 Account was at all relevant times associated with Plaintiff's father's social security number. The 345 Account is the account at issue in this lawsuit.

After the merger, Plaintiff's father bought additional Boeing shares, which Plaintiff co-owned, and they were held in an account ending in -377 ("Account 377"). The 377 Account was associated with Plaintiff's social security number, and the address on record for both the 345 and

---

[2] Plaintiff in her declaration states that "[t]he 2008 1099-DIV dividend amount of the [345 Account] was significant, and it was my belief that the now-escheated account—which had never actually paid out dividends—was part of a dividend reinvestment plan." Doc. No. 108-2 at ¶ 15.

2

377 Accounts was 8720 West Kingsbury, University City, Missouri 63124 ("Kingsbury address"). The 377 Account is not at issue in this lawsuit.

Computershare is the transfer agent for Boeing, and it handles recordkeeping involving shareholders' stock ownership on behalf of Boeing. Computershare identified Account 345 as having gone dormant. Computershare presented evidence, in the form of deposition testimony, that in September 2007, Computershare sent a "due diligence" notice to Plaintiff at the Kingsbury address that stated "Our records indicate that certain property in your name is subject to state abandoned property law since there has not been recent activity on your account."[3] (Doc. No. 91-5). The notice then stated that the property would be transferred to the State of Missouri if no contact was made on the account. Computershare did not retain a copy of the letter sent to the Kingsbury address, but had a computer-generated spreadsheet purporting to show that the notice was sent on September 14, 2007.

There was no response to the due diligence notice. The file for escheatment was prepared by Computershare on March 10, 2008, and the property was transferred to a third party that delivers escheated property to the state. The property was ultimately delivered to the State of Missouri on November 3, 2008.

Plaintiff has had other unclaimed property at the Missouri Treasurer's Office since 2003. According to Treasurer's Office records, it contacted Plaintiff by mail and telephone on multiple occasions after 2003 regarding other unclaimed property, as well as the 345 Account. Also reflected in these records is the fact that Plaintiff called the Treasurer's Office on April 17, 2003,

---

[3] Computershare admits that the due diligence notice submitted in support of its motion for summary judgment is an example of what would have been sent to Plaintiff regarding Account 345, not an actual copy of the notice sent.

3

to inquire about unclaimed property, and, after she failed to return a claim form, the claim was dropped as inactive on May 21, 2009. (Treasurer's Office Records, Doc. No. 100, at 29-32).

Plaintiff disputes that Computershare sent a due diligence notice, that she contacted the Treasurer's Office in 2003, or that the Treasurer's Office attempted to contact her regarding her unclaimed property. In her declaration, she maintains that her first contact with the Treasurer's Office occurred in 2013, and she traveled to the Treasurer's Office in Jefferson City in April 2016, to discuss making a claim for property. (Plaintiff's Decl., Doc. No. 108-2, at ¶¶ 8-10).

Plaintiff maintains in her declaration that she never received the due diligence notice, and she believes that Computershare never sent it to the Kingsbury address. It is undisputed that on June 28, 2004, University City condemned the home located at the Kingsbury address as a fire hazard that was unsafe and unfit for habitation. Plaintiff and her father moved into an apartment at The Gatesworth, a senior living community, on October 4, 2004. In September 2007, at the time the due diligence notice was allegedly sent, Plaintiff was living at The Gatesworth with her father, but testified that from 2004 to 2008, she would retrieve and take the mail from the Kingsbury address to The Gatesworth.

Plaintiff ultimately filed a lawsuit against The Gatesworth following a clean-up of her apartment orchestrated by its management. The trial transcript from that lawsuit reflects that on December 18, 2007, Plaintiff became ill and emergency medical personnel were called to The Gatesworth apartment. University City Fire Department responders also arrived at the scene, and they identified hazardous living conditions, including rooms that were inaccessible due to a large volume of papers and newspapers, a large amount of rotting food in the kitchen area, paper and plastic on top of the stove, and other unhealthy and unsafe conditions. The fire department notified The Gatesworth management regarding the condition of the apartment, which resulted in "a

4

cleanup of the apartment to make it a livable condition both sanitary and fire wise and access wise." (The Gatesworth Trial Transcript, Doc. No. 102-1 at 296). Plaintiff sued The Gatesworth for disposing of her personal property, and in this case, Plaintiff testified that The Gatesworth had thrown away some of her mail.

Plaintiff's father died in January 2009. Plaintiff personally prepared her father's 2008 tax return and filed it in April 2012 after obtaining a three-year extension. In order to prepare his tax return, she reported income generated by Account 345, which was reflected in a 1099-DIV. Plaintiff is familiar with 1099-DIVs because her sole income is dividend income. She holds a bachelor's degree in French and Psychology, a Master's degree in Education, and a Ph.D. in Industrial Psychology from Washington University in St. Louis. Plaintiff worked as an assistant dean at a community college for approximately seven years, and then she engaged in private consulting work in industrial psychology for a few years.

1099-DIVs were issued for both Account 345 and Account 377 for tax years 2005, 2006, 2007, and 2008. (Doc. Nos. 98-2 at 19-27). It is undisputed that no 1099-DIVs were issued for Account 345 after 2008, but Plaintiff continued to receive 1099-DIVs for Account 377. In her deposition, Plaintiff testified as follows regarding 1099-DIVs related to Account 345:

> **Q:** And you learned that there were no -- You learned in 2013 that there was no 1099s received for the tax year 2009; right?
>
> **A:** The tax year 2009 that would have come –
>
> **Q:** Yeah.
>
> **A:** Yeah. That's right.
>
> **Q:** But that was the -- That fact that there was no 1099 for the year 2009 alerted you to believe there was something going on with the Boeing account?
>
> **A:** That's probably fair to say.

5

(Doc. No. 91-2 at 113).

Plaintiff claims that she first learned of the escheat of Account 345 on March 8, 2013, when she contacted the Missouri State Treasurer's office to inquire if she had any unclaimed property after she had viewed a television infomercial stating that States held "unclaimed" property for their residents. She filed this lawsuit on March 7, 2018, four years and 364 days later.

In her amended complaint, Plaintiff asserts two claims against both Boeing and Computershare: negligence and conversion. Plaintiff contends that Defendants owed her a duty to exercise reasonable and necessary diligence to review Boeing's records properly, to locate Plaintiff's other active account with Boeing and locate and communicate with Plaintiff and her father prior to reporting and transferring the Boeing shares to the State Treasurer's Office as presumed abandoned property. She further claims that Defendants exercised unauthorized control over the shares held in Account 345 and deprived her of possession of her property. (Doc. No. 47).

Now, Computershare and Boeing bring separate motions for summary judgment, asserting that Plaintiff's complaint is barred by Missouri law, which requires lawsuits asserting conversion and negligence to be filed within five years from when damages are sustained and capable of ascertainment. They maintain that Plaintiff's damages were capable of ascertainment after Computershare provided Plaintiff with its due diligence notice in September 2007, and again when Computershare transferred the property at issue on March 10, 2008. This, Defendants contend, would have required Plaintiff to file suit on or before March 10, 2013. Alternatively, Defendants maintain that the statute of limitations began to run in April 2012, when Plaintiff filed her father's 2008 tax returns and noticed the absence of 1099-DIVs related to Account 345.

Plaintiff opposes the motions, arguing that her damages were capable of ascertainment on March 8, 2013, when she first contacted the Treasurer's Office. She maintains that it would be unreasonable to assume that Plaintiff would notice the absence of Form 1099-DIVs associated with Account 345, and she argues that whether the due diligence notice was ever sent is a question of fact.

## II. Standard of Review

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Lynn v. Deaconess Med. Ctr.*, 160 F.3d 484, 486 (8th Cir. 1998) (citing Fed. R. Civ. P. 56(c)). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When such a motion is made and supported by the movant, the nonmoving party may not rest on her pleadings but must produce sufficient evidence to support the existence of the essential elements of her case on which she bears the burden of proof. *Id.* at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. *Crossley v. Georgia-Pacific Corp.*, 355 F.3d 1112, 1113 (8th Cir. 2004). "Self-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r*, 614 F.3d 799, 807 (8th Cir. 2010). Put differently, "[m]ere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own

7

conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 526–527 (8th Cir. 2007).

## III. Discussion

Under Missouri law, both conversion and negligence claims fall under a five-year statute of limitations. *See* Mo. Rev. Stat. § 516.120; *see also Gaydos v. Imhoff*, 245 S.W.3d 303, 306 (Mo. Ct. App. 2008) (conversion); *State ex rel. Heart of Am. Council v. McKenzie*, 484 S.W.3d 320, 324 (Mo. 2016) (negligence). Under § 516.100, a claim accrues not "when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment." *Walker v. Barrett*, 650 F.3d 1198, 1204 (8th Cir. 2011) (citing Mo. Rev. Stat. § 516.100).

In *Powel v. Chaminade College Preparatory, Inc.*, 197 S.W.3d 576, 584 (Mo. banc 2006), the Missouri Supreme Court held that the "capable of ascertainment test" set forth in section 516.100 is an objective test. The issue is not when the injury occurred or when a plaintiff subjectively learned of the wrongful conduct. Instead, the test is "when a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages." *Id.* In other words, the statute of limitations begins to run when the "evidence was such to place a reasonably prudent person on notice of a potentially actionable injury." *Id.*

When relevant facts are uncontested, the statute of limitations issue can be decided by the court as a matter of law. *State ex rel. Marianist Province of U.S. v. Ross*, 258 S.W.3d 809, 811 (Mo. 2008) (citing *Powel*, 197 S.W.3d at 583). "Summary judgment is not proper if contradictory or different conclusions may be drawn from the evidence. In that case, it is a question of fact for the jury to decide." *Id.*

Here, the Court agrees with Plaintiff that whether Computershare sent the due diligence letter and whether Plaintiff received it is an issue of fact. Accordingly, whether Plaintiff's damages were readily ascertainable in September 2007 (when Computershare sent the due diligence notice) cannot be resolved on summary judgment.

However, upon careful review of the record, the Court concludes that a reasonable person in Plaintiff's position would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages once she stopped receiving 1099-DIVs for Account 345 or, at the latest, when she filed her father's tax returns in April 2012. Plaintiff is a highly educated individual who for years has derived her income primarily (perhaps solely) from stock dividends. Plaintiff knew she jointly owned the McDonnel Douglass stocks with her father and that they received annual 1099-DIVs reflecting the payment of dividends from Account 345. After her father's death in 2009, Plaintiff became the owner of the McDonnell Douglas Account making it her responsibility to collect and keep track of the 1099-DIVs—an important form necessary for filing a tax return—for Account 345. It is undisputed that Plaintiff did not receive any 1099-DIVs related to Account 345 after 2009, meaning that, in 2010, Plaintiff for the first time would not have received a 1099-DIV for Account 345. Each year thereafter served to warn Plaintiff that something was wrong with the account, and a reasonable person in her position would have taken steps to investigate the absence of these important forms.

Beyond years of missing 1099-DIVs, a reasonable person would have also been put on notice by the steep decline in dividends reflected in Plaintiff's father's 1099-DIVs for Account 345. In 2012, Plaintiff filed her father's 2008 tax return. She admits that in order to file her father's tax return she gathered the 1099-DIVs for the stock accounts associated with her father's identification number, including Account 345. The Account 345 1099-DIV for 2008 showed a

significant drop in dividends from the prior year from $3,625 to $1,036. This drop occurred because on March 8, 2008, Computershare remitted the shares in the account as abandoned property. The Account 377 (Boeing) dividends in comparison, however, increased from $1,974 to $2,256. The drop in Account 345 should have been immediately apparent given that every year previous the dividends for both Account 345 and Account 377 had increased, with Account 345 producing approximately double the dividends of Account 377. Because Plaintiff needed to report the information from the Account 345 1099-DIV on her father's tax return, she had personal knowledge of its contents and should have realized that there was an issue with the account that would require her to act.[4]

Given these facts, the Court rejects Plaintiff's argument that the injury first became ascertainable after her phone call to the Missouri Treasury in 2013. Plaintiff argues that she first became aware of the concept of abandoned property after viewing a television informercial stating that states held unclaimed property for their residents. After learning about this concept, Plaintiff alleges that she called the Missouri Treasury to see if she had any unclaimed property and realized that her shares had been dispossessed. The record, however, reflects that Plaintiff became familiar with the process of contacting the Treasurer's Office about the escheatment of unclaimed property about a decade earlier. Plaintiff called the Treasurer's Office in April 2003 and discussed unclaimed property—including cash benefits for dividends or shares—from several companies other than Boeing. Plaintiff's assertion that she first learned about the potential of unclaimed property in 2013 is contradicted by the objective evidence of record.

---

[4] There is evidence indicating that Plaintiff realized there was an issue with Account 345 and that she undertook steps to figure out the problem. In 2011, Plaintiff began researching Boeing dividend payments at the St. Louis County Library dating back to 2000. Plaintiff's research would have been a logical undertaking by someone who was concerned about the sharp decline in dividends from Account 345.

10

In light of the undisputed evidence in the record, the Court concludes that a reasonable person would have been put on notice that investigation was necessary regarding Account 345 in 2010, after the escheated account no longer generated 1099-DIVs, or, at the latest, upon filing the 2008 tax return in April 2012. *See Mahanna v. U.S. Bank Nat. Ass'n*, 747 F.3d 998, 1002 (8th Cir. 2014) ("[T]he moment of claim accrual [is] the time 'when a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages.'"). Plaintiff did not file her lawsuit until March 7, 2018—six years later. The Court concludes that Plaintiff's claims are time-barred. Therefore, the Court will grant Computershare's motion for summary judgment on statute of limitations grounds and grant in part Boeing's motion for summary judgment. The Court need not address the other grounds raised in Boeing's motion or the other pending motions for summary judgment as they are made moot by this ruling.

### IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Computershare, Inc.'s motion for summary judgment on statute of limitations (Doc. No. 90) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant The Boeing Company's motion for summary judgment (Doc. No. 96) is **GRANTED IN PART AND DENIED IN PART**, as set forth in this Order.

**IT IS FURTHER ORDERED** that Defendant Computershare, Inc.'s motion for summary judgment on measure of damages (Doc. No. 92) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendant Computershare's motion for summary judgment on statute compliance (Doc. No. 94) is **DENIED AS MOOT**.

A separate Judgment will accompany this Memorandum and Order.

Dated this 30th day of March, 2020.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE